United States District Court
Southern District of Texas

**ENTERED**
January 31, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| *In re BP plc Securities Litigation* | **No. 4:10-MD-2185** <br> **This document relates to:** <br> No. 4:12-cv-1256 (cons.) <br> No. 4:12-cv-1272 <br> No. 4:12-cv-2362 (cons.) <br> No. 4:12-cv-3621 <br> No. 4:13-cv-3714 <br> No. 4:13-cv-3715 <br> No. 4:13-cv-0069 <br> No. 4:13-cv-0129 <br> No. 4:14-cv-0517 <br> No. 4:14-cv-0887 <br> No. 4:14-cv-1044 <br> No. 4:14-cv-1393 <br> No. 4:14-cv-3397 <br> No. 4:14-cv-0457 <br> No. 4:14-cv-0980 <br> No. 4:14-cv-1065 <br> No. 4:14-cv-1085 <br> No. 4:14-cv-1068 <br> No. 4:14-cv-1072 <br> No. 4:14-cv-1073 <br> No. 4:14-cv-1075 <br> No. 4:14-cv-1087 <br> No. 4:14-cv-1297 <br> No. 4:14-cv-1280 <br> No. 4:14-cv-1281 <br> No. 4:14-cv-1418 <br> No. 4:14-cv-1083 |

**MEMORANDUM AND ORDER**

Pending before the Court is the Individual Action Plaintiffs' ("Plaintiffs") Motion to Compel Discovery Responses (Doc. No. 1760)[1] and Defendants BP, PLC et al.'s ("Defendants") Motion to Compel Discovery Responses (Doc. No. 1792). After considering the parties' filings, all responses and replies thereto, oral argument, and the applicable law, the Court finds that Plaintiffs' Motion to Compel Discovery shall be **GRANTED IN PART AND DENIED IN PART**, and Defendants' Motion to Compel shall be **DENIED**.

**I.  PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs seek to compel complete responses to several interrogatories as well as the adoption and use of Plaintiffs' proposed search terms and custodians to produce documents related to the alleged misstatements at issue. Because the instant discovery motion is the culmination of a longstanding dispute between the parties, the Court briefly describes this background before addressing the motion on its merits.

Plaintiffs initially filed a motion to compel in August 2016 but withdrew their motion pursuant to a letter agreement between the parties in March 2017 (the "March 2017 Letter Agreement"). (Doc. No. 1762 Exh. G, March 2017 Letter Agreement). The March 2017 Letter Agreement states, in relevant part, that Defendants will:

- "provide initial written responses to Serving Plaintiffs' Interrogatories 1, 3, 9, and 11";
- "work with Serving Plaintiffs to develop and utilize reasonable search terms to identify non-duplicative, non-privileged and responsive documents concerning all alleged misstatements in Serving Plaintiffs' complaints, with the focus being the identification of documents related to newly-alleged misstatements not previously at issue during Defendants' prior discovery efforts in the parallel ADS-only class case and in MDL 2179.

---

[1] Three of the Individual Action Plaintiffs are excluded from this motion; these include DiNapoli Plaintiff (Case No. 4:14-cv-1083), Massachusetts Pension Reserves Plaintiff (Case No. 4:14-cv-1084); and Ohio Plaintiffs (Case No. 4:12-cv-1837).

- Such terms would be applied across the relevant time period, without limited date restrictions"; and
- "work with Serving Plaintiffs to develop and utilize reasonable search terms to identify responsive documents evidencing any direct communications (emails, letters, teleconferences, meetings, etc.) between BP and Serving Plaintiffs and/or their outside investment managers who managed their relevant BP investments."

*Id.* Plaintiffs claim that Defendants did not collaborate in developing these search terms, and accordingly in April 2019 proposed the following: (1) a list of 39 search terms for documents pertaining to all alleged misstatements ("Appendix A"), (2) a list of 25 search terms for all direct communications between Defendants and Plaintiffs or their outside investment managers ("Appendix B"), and (3) a list of 129 potential custodians[2] ("Appendix C"). (Doc. No. 1762 Exh. H at 6-8, 4/5/2019 Letter); (Doc. No. 1807 Exh. II, Updated Appendix C). Defendants rejected many of Plaintiffs' proposed search inquiries and custodians.

Having reached an impasse, Plaintiffs filed the instant motion. Specifically, Plaintiffs' motion seeks to compel (1) complete responses to Interrogatories 1, 3, 9, and 11; and (2) adoption and utilization of Plaintiffs' proposed search terms as enumerated in Appendix A and Appendix B on all of Plaintiffs' proposed custodians as enumerated in Appendix C. The Court first addresses Plaintiffs' motion to compel responses to interrogatories 1, 3, 9, and 11 before turning to the disputed search terms and custodians.

A. <u>Interrogatories 1, 3, 9, and 11</u>

Interrogatories 1, 3, and 9 seek to identify BP employees or third parties who participated in meetings, calls, presentations, and similar direct communications with Plaintiffs or their outside

---

[2]Plaintiffs' Appendix C initially listed the names of 78 potential custodians. (Doc. No. 1762 Exh. H at 6-8, 4/5/2019 Letter). Plaintiffs supplemented this list after Defendants identified new custodians in November 2019 to include a total of 129 potential custodians. (Doc. No. 1807 Exh. II, Updated Appendix C).

3

managers. (Doc. No. 1762-2 at 12-25). Interrogatory 11 seeks to identify all Defendants and BP employees "who participated in the preparation, writing, editing, or creation of any materials, including talking points, scripts, speeches, prepared remarks, agendas . . . or other direct communications" with Plaintiffs or their outside investment managers. (Doc. No. 1762-2 at 25). These requests are relevant to Plaintiffs' claims involving the alleged misstatements at issue in this case, and Defendants have not demonstrated that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C). The Court accordingly orders that Defendants fully respond to Interrogatories 1, 3, 9, and 11.

B. Search terms and custodians

Plaintiffs next seek to compel Defendants to (1) adopt in full their proposed search inquiries as listed in Appendix A and Appendix B, as well as their proposed custodians in Appendix C, and (2) apply the Appendix A and Appendix B search inquiries on all Appendix C custodians. According to Plaintiffs, these searches will produce all documents regarding direct communications between BP and Plaintiffs or their outside investment managers, and all documents regarding the misstatements alleged in Plaintiffs' complaint. (Doc. No. 1761 at 1). Defendants counter that Plaintiffs' searches as proposed are duplicative of the discovery efforts in the MDL 2179 and ADS class actions and disproportionate to the discovery needs at present. The Court agrees in part.

As to Appendix A and Appendix B, the Court finds that the search inquiries listed therein are reasonable and appropriate. While the Court is not unsympathetic to concerns about duplicating discovery efforts from prior related litigation, which were extensive, Plaintiffs' claims in the instant action and its proposed search inquiries are sufficiently distinct from those in previous lawsuits. Plaintiffs' claims, for example, involve new misstatements that occurred during private

4

investor meetings spanning a broader time frame. Moreover, Plaintiffs must establish reliance to succeed on their claims for common law deceit and common law negligent misstatement. *See, e.g.*, *In re BP p.l.c. Sec. Litig.*, 2017 WL 7037706, at *11 (S.D. Tex. June 30, 2017) (listing the elements for common law deceit and negligent misstatement). The Court accordingly adopts the Appendix A and Appendix B search terms in full.

The Court is unpersuaded, however, that Defendants must be compelled to apply these search inquiries to *all* custodians listed in Appendix C. As Defendants have explained, Defendants do not maintain a central document depository of all the emails from present and former BP employees and affiliates. Complying with Plaintiffs' requests, then, would require Defendants to undertake a months-long process of collecting the emails from each of the 129 custodians from locations around the globe. The substantial burden required to, first, collect the custodians' documents and, second, review those voluminous documents for non-duplicative responsive documents outweighs the likely benefit of those efforts. *See* Fed. R. Civ. P. 26(b)(2)(C). This is particularly true where prior discovery efforts focused on many of the misstatements at issue in the present action and indeed included searching the emails of many of the Appendix C custodians. Plaintiffs contend that Defendants agreed to apply all searches to all custodians in the March 2017 Letter Agreement; however, for the reasons stated at the hearing, the Court is unpersuaded that the parties in fact reached such an agreement.

The Court accordingly orders as follows. Defendants must run Plaintiffs' Appendix A and B search inquiries on 15 custodians of Plaintiffs' choice from Plaintiffs' updated Appendix C. If, after the requisite search is complete, the number of additional documents produced is such that

5

searching the files of more custodians is merited, the Court will entertain such a motion at that time.

Plaintiffs' Motion to Compel Discovery Responses is **GRANTED IN PART AND DENIED IN PART.**

II. **DEFENDANTS' MOTION TO COMPEL**

Defendants' motion seeks complete responses from eleven Test-Case Plaintiffs[3] (the "Test-Case Plaintiffs") to Defendants' Second Set of Interrogatories (the "Interrogatory"). The discovery request pertains to 107 non-party investment advisors the Test-Case Plaintiffs previously identified as having been delegated partial or complete investment authority for the BP trades at issue. (Doc. No. 1793-1 at ¶7, De Leeuw Decl.). Specifically, Defendants' motion seeks to compel the Test-Case Plaintiffs to identify which of the 107 investment advisors Plaintiffs anticipate using to establish the reliance element of their common law deceit and common law negligent misstatement claims. The Interrogatory states, in relevant part:

> For each purchase of a Security or Securities for which You are seeking damages, (i) identify each Investment Manager, if any, on which You intend to rely to prove reliance on any alleged misstatement in executing that purchase on Your behalf.

(Doc. No. 1794-9 at 4).[4]

---

[3] Pursuant to a letter agreement between the parties dated December 28, 2017, all Plaintiffs identified outside managers, if any, who oversaw investments in BP. (Doc. No. 1793-1 at ¶5, De Leeuw Decl.). The parties subsequently selected 16 "Test-Case" Plaintiffs. *Id.* Eleven of these Test-Case Plaintiffs are at issue in this motion to compel, and include: (1) GIC Private Limited, (2) Lincolnshire County Council, (3) Louisiana State Employees' Retirement System; (4) Metzler Asset Management GmbH (f/k/a Metzler Investment GmbH); (5) Mondrian International Equity Fund, L.P., (6) New York State Common Retirement Fund, (7) North Carolina Department of State Treasurer, (8) Public Employees Retirement Association of Colorado, (9) Public School and Education Employee Retirement Systems of Missouri, (10) Teacher Retirement System of Texas, (11) Washington State Investment Board.

[4] Defendants' June 12, 2019 Interrogatory also demanded that Plaintiffs: "(ii) describe the documentary or testimonial evidence on which You intend to rely to prove such reliance relating to each Investment Manager that You identify." (Doc. No. 1794-9 at 4). However, Defendants have explicitly stated that they do not seek to compel Plaintiffs' response to this portion of the interrogatory at this time. *See* (Doc. No. 1794 at 5 n.1).

Defendants contend that the information requested is necessary to focus discovery and deposition efforts on those investment advisors who *in fact* possess information relevant to Plaintiffs' claims. According to Defendants, based on the 43 investment advisors Defendants have already subpoenaed, at least some of the investment advisors "did not rely, and/or could not have relied, on Defendants' alleged misstatements in purchasing and/or holding BP securities for Plaintiffs—either because they have no record of trading BP securities for Plaintiffs or because they invested in 'quantitative funds,'" which are investment decisions "made by computer-based algorithms rather than human judgment." (Doc. No. 1794 at 4); (Doc. No. 1793-1 at ¶8, De Leeuw Decl.). Defendants seek to streamline discovery and avoid unnecessarily deposing the remaining 64 investment advisors. Plaintiffs, in turn, reject Defendants' contention that many of Plaintiffs' investment managers did not rely on Defendants' alleged misstatements, offering counter affidavits from investment advisors indicating that they did rely on Defendants' statements. *See* (Doc. No. 1799 Ex. G at ¶7). Plaintiffs further argue that Defendants' request impermissibly and prematurely seeks a witness list prior to the deadline under the Court's scheduling/docket control order (Doc. No. 1766) and Rule 26(a)(3).

Interrogatories "may properly ask for the facts that support an allegation or defense *as well as the identities of knowledgeable persons* and supporting documents for the facts supporting an allegation or defense." *Alcala v. Tex. Webb. Cty.*, 2012 WL 10694159, at *3 (S.D. Tex. Dec. 7, 2009). "While courts should not require a party to 'write basically a portrait of their trial for the other parties,' courts generally approve of 'appropriately timed contention interrogatories as they tend to narrow issues, avoid wasteful preparation, and, it is hoped, expedite a resolution of the litigation.'" *Gomez v. Nationwide Prop. & Cas. Ins. Co.*, 2016 WL 6816215, at *5 (S.D. Tex. Feb. 26, 2016) (quoting *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)). Interrogatories that

in effect seek a premature witness list are disfavored. *See, e.g.*, *Martin v. Cty. of Dallas*, 2011 WL 13232699, at *4 (N.D. Tex. Jan. 14, 2011) (rejecting plaintiffs' motion to compel response to interrogatories aimed at prematurely securing witness list).

In this case, the Test-Case Plaintiffs have already narrowed the pool of relevant investment advisors upon which they may rely to 107 individuals who possessed partial or complete investment authority for the BP trades at issue. Which of these investment advisors Plaintiffs will ultimately rely upon may evolve as Plaintiffs continue to depose those individuals and build their case. Defendants, on the other hand, subpoenaed and deposed 43 of these investment advisors between March and July 2019 but have since halted further efforts. Under these circumstances, and given Defendants' refusal to honor Plaintiffs' reciprocal request to identify witnesses upon whom they intend to rely, the Court declines to compel Plaintiffs to respond to the Interrogatory. Defendants' Motion to Compel Discovery Responses is **DENIED**.

## V. CONCLUSION

Plaintiffs' motion to compel is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion to compel is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 30th day of January, 2020.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE